IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**MOUNTAIN EAST CONFERENCE,**

    **Plaintiff,**

**v.**                                                         **CIVIL ACTION NO. 1:21-CV-104**
                                                                                  **(KLEEH)**

**FRANKLIN UNIVERSITY, an Ohio
non-profit corporation; and
FRANKLIN UNIVERSITY - URBANA, LLC,
d/b/a URBANA UNIVERSITY an Ohio
limited liability company,**

    **Defendants.**

**MEMORANDUM OPINION AND ORDER DENYING
DEFENDANTS' MOTION TO DISMISS [ECF NO. 6]**

Pending before the Court is *Defendants Franklin University and Franklin University – Urbana, LLC's Motion to Dismiss* [ECF No. 6]. For the reasons discussed herein, the Motion is **DENIED**.

    **I.**     <u>**PROCEDURAL HISTORY**</u>

On July 26, 2021, Plaintiff Mountain East Conference ("Plaintiff" or "MEC") filed a Complaint against Defendants Franklin University ("Franklin") and Franklin University – Urbana, LLC, d/b/a Urbana University ("Urbana") (collectively "Defendants"). ECF No. 1. On August 26, 2021, Defendants filed Motion to Dismiss or, in the Alternative, to Transfer Venue [ECF No. 6] pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1406(a). Plaintiff responded in

**MEMORANDUM OPINION AND ORDER DENYING**
**DEFENDANTS' MOTION TO DISMISS [ECF NO. 6]**

opposition to the motion. ECF No. 9. Defendants filed their reply in support. ECF No. 10. The Court entered its First Order and Notice, the parties returned their Report of Planning Meeting and Scheduling Order Checklist. ECF Nos. 11, 12, 13. The Court entered its Scheduling Order which governs the deadlines in this case. ECF No. 14. Discovery ensued.

Defendants' Motion to Dismiss ("motion") [ECF No. 6] is ripe for decision and is the subject of this Memorandum Opinion and Order.

## II.  COMPLAINT

MEC brings a breach of contract claim against Defendants, seeking a damages award of $150,000.00. ECF No. 1-1, Compl. Plaintiff's principal place of business is in Bridgeport, West Virginia, and Defendants' principal places of business are both in Columbus, Franklin County, Ohio. Id. at ¶¶ 1-3.  On August 20, 2012, MEC was established as a division II competitor in the National Collegiate Athletic Association. Id. at ¶ 9. That same day, Urbana became a charter member of the MEC. Id. at ¶ 11. In November 2012, MEC executed its Constitution and Bylaws, which were later updated on August 28, 2018. Id. at ¶ 10. Urbana joined the MEC in 2013. Id. at ¶ 12.

In April 2014, Franklin purchased Urbana "to become a part of

the Franklin family and operate as a division of Franklin, often referred to as Franklin/Urbana." Id. at ¶ 13. Urbana was to retain its name and affiliation with the National Collegiate Athletic Association ("NCAA") pursuant to the purchase agreement. Id. at ¶ 14. On August 1, 2017, Franklin received approval for its change of status and officially brought in Urbana as a "branch campus" under the Franklin accreditation, making Urbana "undistinguish[able] from Franklin[]", and wiping clean Urbana's existing academic probation. Id. at ¶¶ 16-18. "In an effort to promote [Defendants] and the recently acquired athletic offerings for the institution, from approximately 2014 through 2018, Franklin [] contributed more than $15,000,000.00 into [Defendants'] facilities," including wrestling, football, gymnasium, and soccer facilities. Id. at ¶ 19. "As a MEC member institution, [Defendants] [were] bound by the MEC's Constitution and Bylaws, including payment of annual full-time member dues of $25,000.00 through each year of competition dating back to July of 2013." Id. at ¶ 23. "As a MEC member institution, Urbana University was subject to 'Article III: Membership; Section 8 Resignation from the Conference' within the MEC Constitution." Id. at ¶ 24.

> [A] member institution may withdraw from the conference by sending an official notice of its intent to the Chair of the Board of Directors and the Commissioner, not later than May 31;. . . the withdrawal shall become

> effective on the June 30, three years and one month following the filing date that follows an official notice stipulated within Section 8.1;. . . if a withdrawing member institution is unable to comply with the withdrawal stipulations set forth under Section 8.2, it shall be liable for a sum based on the schedule listed within this section immediately upon Notification; . . . [and] if withdrawal occurs more than 24 months prior to the effective date stipulated within 8.2, the withdrawing institution will owe a sum equal to six years of annual dues.

Id. at ¶¶ 25-28 (quoting Sections 8.1, 8.2, 8.3, and 8.3.1 of the MEC Constitution).

In April 2020, Defendants announced it was closing Urbana's physical campus, moving all classes online, and stopping enrollment for new students at the end of the spring semester, including sports. Id. at ¶ 29. This decision required Urbana's school records and academic offerings to be transferred to Franklin. Id. at ¶ 35. On May 8, 2020, Urbana notified MEC of this cease-in-operations decision and provided the formal notice of its intention to withdraw from MEC on June 30, 2023. Id. at ¶¶ 30-32. Pursuant to the MEC Constitution, "the agreed to exit fee for [Defendants] was $150,000.00, which is equal to six-times the aforementioned dues of $25,000.00 per year." Id. at ¶ 34. MEC sent a demand letter to Franklin, requesting the "exit fee in the amount of $150,000.00, as a result of Defendants' unilateral decision to withdraw from the MEC." Id. at ¶ 36. To date, Defendants have not

paid any part of the exit fee MEC believes it is owed. Id. at ¶ 37.

On July 26, 2021, MEC filed a Complaint alleging breach of contract against Defendants Franklin and Urbana as the sole cause of action. MEC seeks payment of all exit fees, an amount not less than One Hundred and Fifty Thousand and 00/100 Dollars ($150,000.00), pursuant to the terms of the MEC Constitution and Bylaws it believes Defendants are subject to, and attorneys' fees, costs, and expenses.

### III. LEGAL STANDARD

When a defendant files a Federal Rule of Civil Procedure 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the ultimate burden of showing that jurisdiction exists by a preponderance of the evidence. New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005). However, where a court makes a Rule 12(b)(2) determination without a hearing and based only on the written record, as the Court does here, the plaintiff need only put forth a prima facie showing of jurisdiction "by pointing to affidavits or other relevant evidence." Henderson v. Metlife Bank, N.A., No. 3:11-cv-20, 2011 WL 1897427, at *6 (N.D. W. Va. May 18, 2011); see also New Wellington Fin. Corp., 416 F.3d at 294. The Court must then "construe all relevant pleading allegations in the light most

favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." New Wellington Fin. Corp., 416 F.3d at 294; see also 5B Wright & Miller, Federal Practice and Procedure § 1351 (3rd. ed.).

Under Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure, a federal district court may exercise personal jurisdiction over a defendant to the same degree that a counterpart state court could do so. See Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners, 229 F.3d 448, 450 (4th Cir. 2000). Importantly as a result, for a district court to have jurisdiction over a nonresident defendant, the exercise of jurisdiction (1) must be authorized under the state's long-arm statute, and (2) must comport with the due process requirements of the Fourteenth Amendment. Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003) (citing Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001)). As West Virginia's long-arm statute provides jurisdiction to the full extent allowable under the United States Constitution, see W. Va. Code § 56-3-33, the Court need only consider whether the exercise of personal jurisdiction would comport with the Due Process Clause.

West Virginia Code § 31D-15-1501 deems a foreign corporation to be transacting business in West Virginia if:

> (1) the corporation makes a contract to be performed, in whole or in part, by any party thereto, in West Virginia;
> (2) the corporation commits a tort, in whole or in part, in West Virginia; or
> (3) the corporation manufactures, sells, offers for sale or supplies any product in a defective condition and that product causes injury to any person or property within West Virginia.

For a district court to assert jurisdiction over a nonresident defendant within the confines of due process, the defendant must have "minimum contacts" with the forum state such that it is consistent with "fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). The Fourth Circuit states that an out-of-state defendant must have minimum contacts that are purposeful to help "ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum." In re Celotex Corp., 124 F.3d 619, 628 (4th Cir. 1997).

A court analyzes whether a defendant possesses such minimum contacts by looking to whether the plaintiff seeks to establish "specific" or "general" jurisdiction. Specific jurisdiction is exercised when the defendant's contacts with the forum state form the basis of the suit. Carefirst, 334 F.3d at 397. In determining whether a defendant's contacts support the exercise of specific jurisdiction, a district court considers the following: "(1) the

7

extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" Id. at 396.

Where the defendant's contacts are unrelated to the basis of the suit, a court must look to the requirements of general jurisdiction. Id. at 397. The standard for finding the existence of general jurisdiction is high: the defendant must have "continuous and systematic" contacts with the forum state. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416(1984); see also ESAB Group, Inc. v. Centricut, 126 F.3d 617, 623 (4th Cir. 1997) ("[T]he threshold level of minimum contacts sufficient to confer general jurisdiction is significantly higher than for specific jurisdiction."). The hallmark of general jurisdiction is that the defendant's contacts with the forum state are so extensive that it should reasonably foresee being haled into court there. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

Like a plaintiff's burden to establish personal jurisdiction without an evidentiary hearing, a "plaintiff need only make a prima facie showing of venue" to survive a motion to dismiss. Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir. 2004). Federal venue laws lie

in 28 U.S.C. § 1406, which provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Rule 12(b)(3) of the Federal Rules of Civil Procedure governs the motion to dismiss a case for such an "improper venue" as contemplated by the statute. "[A] district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

28 U.S.C. § 1391 generally governs whether a venue is "improper" as argued here by Defendants.

> A civil action may be brought in —
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). If the case does not fall in one of the three categories, "venue is improper and the case must be dismissed or

transferred under § 1406(a)." Atl. Marine Const. Co., Inc. v. Dist. Court for the W. Dist. of Tex., 571 U.S. 49, 56 (2013).

### IV.   DISCUSSION

Defendants' motion to dismiss [ECF No. 6] is based upon two (2) assertions: Plaintiff cannot establish that (1) this Court has personal jurisdiction over Defendants, and (2) venue is proper in this Court. Defendants filed the motion pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure, and 28 U.S.C. §§ 1406, 1631, and 1404, arguing (1) the Court lacks general and specific personal jurisdiction over both defendants, and (2) venue is improper in this district.  ECF No. 6. Defendants attached six (6) exhibits to the motion: MEC Constitution [ECF No. 6-1, Exhibit 1], MEC Bylaws [ECF No. 6-2, Exhibit 2], Urbana's cease operation letter to MEC [ECF No. 6-3, Exhibit C], MEC's May 21, 2020 letter to Urbana [ECF No. 6-4, Exhibit 4], MEC May 11, 2021 demand letter to Urbana for exit fee [ECF No. 6-5, Exhibit 5], and Declaration of Dr. Christopher L. Washington [ECF No. 6-6, Exhibit 6].

MEC responded in opposition to the motion arguing Defendants are subject to personal jurisdiction and the complaint survives dismissal because Defendants availed themselves of the privilege of conducting business in West Virginia. ECF No. 9. MEC's alternative request is that the Court allow the parties to engage

in jurisdictional discovery. Id. Plaintiff attached four (4) exhibits to the response: a spreadsheet of sport activities occurring in West Virginia [ECF No. 9-1, Exhibit 1], paid MEC annual dues invoices by Urbana [ECF No. 9-2, Exhibit 2], paid MEC sport invoices by Urbana [ECF No. 9-3, Exhibit 3], and a spreadsheet of meetings held in West Virginia and attended by Urbana [ECF No. 9-4, Exhibit 4].

### a. Plaintiff MEC meets its prima facie burden in the specific personal jurisdiction inquiry. Fed. R. Civ. P. 12(b)(2).

MEC meets its prima facie burden in the personal jurisdiction inquiry; therefore, the motion to dismiss must be denied on this ground. Fed. R. Civ. P. 12(b)(2). Defendants dispute, and MEC asserts, that the MEC Bylaws operate as a contractual agreement. Despite this, and without making a finding as to whether the parties entered into a valid and enforceable contract, the Court finds Franklin, an Ohio non-profit corporation whose principal place of business is in Columbus, Ohio, and Urbana, a dissolved Ohio limited liability company whose principal place of business was also Columbus, Ohio, have sufficient contacts with the forum State to render the exercise of jurisdiction over Defendants constitutionally permissible.

The Court's analysis turns on three factors: "(1) the extent to which the defendant has purposefully availed itself of the

privilege of conducting activities in the state; (2) whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" Carefirst, 334 F.3d at 396. "The relationship [among the defendant, the forum, and the litigation] must arise out of contacts that the 'defendant himself' creates with the forum State." Walden v. Fiore, 571 U.S. 277 (2014) (citing Burger King Corp. v. Rudzewicz, 471 U. S. 462, 475 (1985)). "Fairness is the touchstone of the jurisdictional inquiry." Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 559 (4th Cir. 2014) (internal quotation and citation omitted).

In the business context, the purposeful availment evaluation weighs a number of factors: (1) "whether the defendant maintains offices or agents in the forum state;" (2) "whether the defendant owns property in the forum state;" (3) "whether the defendant reached into the forum state to solicit or initiate business;" (4) "whether the defendant deliberately engaged in significant or long-term business activities in the forum state;" (5) "whether the parties contractually agreed that the law of the forum state would govern disputes;" (6) "whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;" (7) "the nature, quality and extent of the parties' communications about the business being transacted;"

and (8) "whether the performance of contractual duties was to occur within the forum." Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 559 (4th Cir. 2014), (quoting Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009) (citations omitted)). Generally, a "foreign defendant has purposefully availed itself of the privilege of conducting business in the forum state when the defendant substantially collaborated with a forum resident and that joint enterprise constituted an integral element of the dispute." Universal Leather, 773 F.3d at 559; (quoting Tire Eng'g v. Shandong Linglong Rubber Co., 682 F.3d 292, 302 (4th Cir. 2012) (internal quotations omitted)). In contrast, purposeful availment is absent in cases where "the locus of the parties' interaction was overwhelmingly abroad." Tire Eng'g, 682 F.3d at 302.

"The . . . by-laws are agreements between the corporation, its shareholders, and the state that grants the corporation authority to operate." In re Health Diagnostic Laboratory, Inc., 557 B.R. 885, 896 (Bankr. E.D. Va. 2016), see also Rutgers, The State Univ. v. Am. Athletic Conf., No. 12-7898 MAS, 2013 WL 5936632, at *8 (D.N.J. Oct. 31, 2013) (finding that the conference Bylaws was a contractual agreement between Rutgers and the Big East Conference). "If the question is whether an individual's contract with an out-of-state party *alone* can automatically

establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985) (emphasis in original). In breach of contract actions, only those contacts directly related to the contract at issue are relevant for purposes of establishing personal jurisdiction. See CEM Corp. v. Pers. Chemistry, AB, 55 F. App'x 621, 625-26 (4th Cir. 2003) ("[O]ne visit to the state, accompanied by a few telephone calls and faxes to settle litigation . . . would not put [the defendant] on notice that it 'should reasonably anticipate being haled into court' in North Carolina.") (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

Defendants both argue the Court does not have personal jurisdiction over them because there are insufficient minimum contacts with the forum state and therefore asserting personal jurisdiction over these defendants would violate the Due Process Clause. See ECF No. 6. MEC alleges that Defendants have sufficient contacts with West Virginia such that it availed itself of this jurisdiction since 2014, and justifies the Court's exercise of specific jurisdiction. See ECF No. 9. Notable to the Court's discussion regarding Defendants' contacts, MEC provided the Court multiple exhibits, including evidence of Urbana's substantial athletic involvement in the state of West Virginia since 2013, and

multiple paid invoices totaling hundreds of thousands of dollars by Urbana to MEC, headquartered in Bridgeport, West Virginia. Exhibits A, B, ECF Nos. 9-1, 9-2. Urbana University, as an intrinsic part of Franklin University, has participated in sporting events within the state of West Virginia since the year 2013. Exhibit A, ECF No. 9-1. As recent as the 2019-2020 season, of the twenty-nine regular season games, Urbana participated in eleven regular season games and one conference game in the state of West Virginia. Id. Over the course of Defendants' membership with the MEC, totaling seasons 2013-14 and 2019-20, Urbana's men's basketball team participated in seventy-four games in the state of West Virginia. Id.  MEC asserts as many as 50 percent of Defendants' athletic sporting events took place in this state. Defendants have undoubtedly availed themselves of the benefit of West Virginia over a span of years through the athletic involvement of the West Virginia based schools, and the exercise of personal jurisdiction over Defendants comports with due process.

Defendants paid annual membership dues to the MEC from 2014 through 2019, totaling $150,000.00. Exhibits B, C, ECF Nos. 9-2, 9-3. Defendants have paid bi-weekly invoices to MEC for fees such as officiating fees, letter of intent fees, and Synergy fees, again totaling hundreds of thousands of dollars. Id. Urbana has attended approximately forty in-person events – media days, conferences,

**MEC v. Franklin University, et al.**                               **1:21-CV-104**

**MEMORANDUM OPINION AND ORDER DENYING
DEFENDANTS' MOTION TO DISMISS [ECF NO. 6]**

and meetings – in West Virginia from 2013 through 2020. Exhibit D, ECF No. 9-4. Defendants have gone beyond the threshold for purposeful availment because Defendants have clearly reached into the state to solicit or initiate business by participating in sporting events and attending MEC meetings and conferences, by engaging in significant, long-term business activities from 2013 to 2020. Defendants performed part of their contractual duties in West Virginia, which include attending meetings and conferences, and participating in scheduled sporting events with other members of the MEC.

This case is distinguishable from CEM Corp. Having only a prima facie burden, Plaintiff MEC prevails here. MEC provided evidence that Defendants target the forum state – West Virginia - with its activities stemming from the constitution and bylaws between Defendants and MEC. There is compelling evidence that Defendants have a contract to be performed in the state or committed any tort in the state. See Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 559 (4th Cir. 2014); see also W. Va. Code § 56-3-33.  While neither Defendant has, nor had, any operations in the state of West Virginia, Defendants have availed themselves of being haled into court in this State by their long-term business activities spanning years of time. Because MEC met its prima facie burden in the specific personal jurisdiction

inquiry, the motion is **DENIED**. Fed. R. Civ. P. 12(b)(2).

b. **Plaintiff MEC fails to meet its prima facie burden in the general personal jurisdiction inquiry. Fed. R. Civ. P. 12(b)(2).**

General jurisdiction, when a defendant is so "at home" in a forum state that it is subjected to personal jurisdiction, is a more stringent burden to meet than that of specific jurisdiction. See ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir. 1997) ("the threshold level of minimum contacts sufficient to confer general jurisdiction is significantly higher than for specific jurisdiction."). Plaintiff met its prima facie case of specific jurisdiction, arising out of its breach of contract claim against Defendants. Defendants, however, move to dismiss the complaint arguing that they are not subject to either specific or general jurisdiction in this Court.

This Court agrees that Defendants are not subject to general jurisdiction because they have not established such a continuous and systematic presence in West Virginia that they are "at home" here. Defendants' contacts with the forum state have all arisen out of MEC's breach of contract claim it brings in the complaint, which supports this Court's finding of specific personal jurisdiction here. MEC did not argue general jurisdiction in its responsive filing. See ECF No. 9 at 3 ("A party can satisfy federal due process requirements by establishing the existence of specific

jurisdiction or general jurisdiction. In this matter, specific jurisdiction is most relevant to any considerations by this Court."). However, because MEC overcame its prima facie burden in the specific personal jurisdiction inquiry, the motion is still **DENIED**. Fed. R. Civ. P. 12(b)(2).

   c. **Venue is proper. 28 U.S.C. §§ 1391(b)(2) and (3).**

Finally, Defendants argue venue is improper in this judicial district. Under 28 U.S.C. § 1391(b), "[a] civil action may be brought in" the following judicial districts:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . .; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(1)-(3). In this case, the Northern District of West Virginia falls into two out of the three categories. 28 U.S.C. § 1391(b)(2)-(3). The Court analyzed in Section IV.a. that Defendants have availed themselves of the forum state by their actions and involvement in West Virginia, including years' worth of events and/or omissions giving rise to the breach of contract claim.  28 U.S.C. § 1391(b)(2)-(3) are both easily met here.

### V.     CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss is **DENIED**. ECF No. 6.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record.

**DATED:**   March 29, 2022

*Tom S Kleeh*
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA