UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| Mountain East Conference | : | |
| | : | Civil Action No. 1:21-CV-104 |
| Plaintiff, | : | |
| | : | Judge Kleeh |
| vs. | : | |
| | : | |
| Franklin University, *et al.* | : | |
| | : | |
| Defendants. | : | |

### <u>DEFENDANT FRANKLIN UNIVERSITY'S MEMORANDUM IN OPPOSITION TO PLAINTIFF MEC'S MOTION TO COMPEL DISCOVERY</u>

**I.    Introduction**

There is one and only one question in this lawsuit: can the Mountain East Conference hold Franklin liable for an exit fee from the Conference under the circumstances presented by this case? (*See* MEC Mot. for Summ. J. 2, 13.) That is all. MEC's maximum recovery in the case is $150,000.00 (Compl. ¶ 41, Doc. # 1, PageID # 6.) The amount in controversy matters in large part because the MEC has filed a premature Motion to Compel discovery responses from Franklin. (Doc. # 42.) But MEC's requests must be:

> proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

As explained below, much of the discovery sought by MEC has absolutely nothing to do with the sole question of whether the MEC can hold Franklin liable for the exit fee. Further, after two productions of more than 11,000 documents, Franklin has diligently searched its records,

1

and has produced everything relevant to this matter, some of which dates back nearly eight years. For the reasons outlined below, the Motion to Compel should be denied.

II. **Legal Argument**

The MEC's Motion to Compel should be denied for three reasons. First, the MEC filed its Motion prematurely, and without the certifications and information required by Federal Rule 37 and Local Rule 37.02. Second, much of the information and documentation that MEC seeks is completely irrelevant to this one-issue dispute. Third, Franklin has produced all of the responsive information and documentation that it has, and the Motion is therefore moot.

> A. **The MEC's Motion to Compel was premature, and it does not contain the certifications and information required by Fed. R. Civ. P. 37(a) and Local Rule 37.02.**

The MEC filed its Motion to Compel on September 1, 2022. (Doc. # 42, PageID # 247.) Exactly two days earlier, counsel for Franklin notified the MEC's counsel that Franklin's most recent search had yielded some additional responsive documents, that counsel needed to review the documents for privilege, and that documents would be produced as soon as that review could be completed. (See August 30, 2022 email attached as Exhibit A.)

It is clear even from the MEC's Motion to Compel that the parties had been engaged in various discussions about discovery responses for months at that point. Those discussions may not have been to the MEC's satisfaction, but it's clear that Franklin's counsel was responding and engaging in those discussions meaningfully, in an attempt to resolve any issues. (Mot. to Compel 2-3.) But rather than continuing those discussions, the MEC filed its Motion to Compel. One week later, Franklin produced another group of several hundred documents, comprising four-thousand additional pages. (*See* September 8, 2022 email with LiquidFiles link, attached as Exhibit B.) That is the amount of time it took counsel to load, index, review, and code the

documents for privilege, and the MEC did not receive the documents any faster as a result of filing its Motion to Compel.

Franklin also notes that, although the Motion to Compel contains a discussion of the parties' communications regarding discovery, it does not contain the "certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a). Nor does it comply with Local Rule 37.02. The lack of a certification is important; for it is the certification that guarantees the parties are not running to court with increasingly common discovery skirmishes, instead of resolving their concerns amicably. *See, e.g., Givens v. Criswell*, Civil Action No. 5:08CV25, 2009 WL 3712587, *1-2 (N.D. W. Va. Nov. 03, 2009) (denying Motion to Compel for failure to file Rule 37 certification and Local Rule 37.02 requirements); *Alberts v. Wheeling Jesuit Univ.*, Civil Action No. 5:09-CV-109, 2010 BL 434459, *2 (N.D.W. Va. Mar. 29, 2010) ("Defendant failed to certify compliance with the good faith requirements under both the Federal and Local Rules. Accordingly, Defendant did not comply with the Federal and Local Rules, and Defendant's Motion to Compel must be *DENIED*.").

The MEC filed its Motion to Compel when it was not necessary to do so, and without the certification required by Rule 37(a) and the information required by Local Rule 37.02. The Motion should therefore be denied.

### B. Many of the discovery requests issued by the MEC are wholly irrelevant to the only issue in the case.

Again, there is only one issue in the case: can the MEC hold Franklin liable for an exit fee under the circumstances? Plaintiff's Complaint contains only one count, for breach of contract. (Compl. ¶¶ 39-43, Doc. # 1, PageID # 6.) The maximum exit fee is $150,000.00. (Compl. ¶ 41, Doc. # 1, PageID # 6.) Simply put, this is not a multi-million dollar case involving

3

terabytes of relevant data. In fact, Plaintiff's Complaint demonstrates that their only real basis for even seeking the exit fee from Franklin is found in the Constitution and Bylaws of the MEC. (Compl. ¶ 39, Doc. # 1, PageID # 6) ("Pursuant to the terms of the Constitution and Bylaws, Defendants agreed to comply with the terms and conditions stated therein, including payment of all exit fees as described hereinabove.").

Franklin, of course, disputes that it ever agreed to be bound by the terms of the MEC's Constitution and Bylaws. Franklin was never a member of the MEC, because it was never interested in becoming a member of the MEC, as the Commissioner of the MEC acknowledged at his deposition. (Deposition of Reid Amos 30:15-22; 31:5-19; 32:1-6 33:1-11) (Deposition Transcript, attached as <u>Exhibit C</u>, and referred to hereafter as "Amos Dep."). Franklin has never even had sports teams, other than intramural sports. (Amos Dep. 32:7-13.)

But even if Franklin were somehow bound by the MEC Constitution and Bylaws, the maximum recovery in the case is $150,000, even by the MEC's own admission. (Compl. ¶ 41, Doc. # 1, PageID # 6.) The vast majority of this dispute will be resolved by construing the language of the MEC Constitution and Bylaws, and the parties' competing claims that Franklin either is or is not bound by them. There isn't very much outside that context that's relevant to the case at all.

Nonetheless, the MEC issued very broad discovery requests, largely irrelevant to the issue in this case. For example, the MEC issued Interrogatories asking for the following:

- Information regarding Franklin's purchase of Urbana (Interrogatory Number 9, Doc. # 42-1, PageID # 311);

- Information regarding the academic accreditation of Urbana Interrogatory Number 10, Doc. # 42-1, PageID # 312);

- Information regarding improvements to the athletic facilities at Urbana Interrogatory Number 11, Doc. # 42-1, PageID # 312);

4

- Information regarding all monies Franklin invested in Urbana Interrogatory Number 12, Doc. # 42-1, PageID # 312);

- Information regarding all advertising of Urbana athletic programs; Interrogatory Number 14, Doc. # 42-1, PageID # 312);

- Information regarding all debts owed by Franklin for Urbana Interrogatory Number 18, Doc. # 42-1, PageID # 312).

The MEC also issued the following document requests:

- All documents referring to the MEC (Document Request Number 3, Doc. # 42-1, PageID # 314);

- All documents related to this lawsuit (Document Request Number 4, Doc. # 42-1, PageID # 314);

- All documents regarding the purchase[1] of Urbana (Document Request Number 9, Doc. # 42-1, PageID # 315);

- All documents provided to the Ohio Department of Higher Education, the Higher Learning Commission, and any state or federal entity to support the acquisition of Urbana (Document Request Number 10, Doc. # 42-1, PageID # 315);

- All documents related to Urbana's academic accreditation (Document Request Number 11, Doc. # 42-1, PageID # 315);

- All documents related to investments in improving athletic and academic programs, including how the funds were used (Document Request Number 12, Doc. # 42-1, PageID # 316);

- All marketing/ads for student enrollment at Urbana (Document Request Number 13, Doc. # 42-1, PageID # 316);

- All marketing/ads for Urbana athletic programs (Document Request Number 14, Doc. # 42-1, PageID # 316);

- All documents related to debts owed on behalf of Urbana (Document Request Number 17, Doc. # 42-1, PageID # 317);

- All documents related to any obligations owed by Franklin on behalf of Urbana (Document Request Number 18, Doc. # 42-1, PageID # 317).

---

[1] This request is misleading. Franklin purchased assets of Urbana University, not the University itself, and not Urbana's liabilities.

Because of the limited nature of the one issue in this case, it is barely plausible to assert that this information and these documents are truly relevant to the case. They certainly won't be dispositive. Urbana's accreditation is not at issue. How much Franklin spent on Urbana's football stadium is not at issue. Advertisements for Urbana sports programs are not at issue. Marketing campaigns to attract students to Urbana are not at issue. Other debts of Franklin or Urbana are not at issue.

Further, Franklin acquired the assets of Urbana (not the liabilities) in 2014, so some of these documents go back eight years in time. Some are in paper files; some are electronic. Multiple custodians have responsive documents. This is why Franklin's search, collection, and production took so long. To the extent that the MEC complains about a document dump, it need look no further than its overreaching discovery requests for the source of Franklin's extensive discovery.

### C. MEC's Motion is Moot, because Franklin has provided all of the information and documentation in its possession, custody, and control.

Now that Franklin has made two document productions of more than 11,000 pages,[2] produced two high-level executives for separate all-day depositions (including Franklin's President), and otherwise worked with MEC's counsel to resolve their questions, Franklin has given the MEC all of the responsive information and documentation that it has.

---

[2] The production of such a large number of pages in this case also increases Franklin's task of responding to MEC's discovery requests by identifying the specific Bates numbers of documents responsive to each request. Although the MEC repeatedly characterizes Franklin's productions as "document dumps," that term as it is traditionally used is more or less meaningless now that productions routinely involved gigabytes and terabytes of data, as long as the data is produced with associated metadata and in searchable form. *See, e.g. Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 108 (E.D. Pa. 2010) (production of documents/data along with metadata provides crucial information and allows the requesting party to engage in a, "more effective and meaningful search and use of Defendants' extensive documentation"). In other words, the MEC did not need to wait for Franklin to identify which documents were responsive, because they could search and review the documents and metadata with equal alacrity and access.

Especially given the need for the discovery requests to be proportional to the needs of the case, the Motion to Compel should be denied and the parties should proceed with summary judgment briefing.

One final point bears mentioning. Notwithstanding the fact that its Motion to Compel is pending—and apparently unresolved according to the MEC—the MEC filed its Motion for Summary Judgment on September 12, 2022. Franklin's supposed recalcitrance in discovery obviously didn't hamper the MEC in submitting a dispositive motion. That is because Franklin has given the MEC everything it has—even hundreds of documents that are clearly irrelevant to the case and that the MEC did not use to support its Motion for Summary Judgment (and almost certainly will not use at trial).

### III.   Conclusion

For all of the foregoing reasons, the Motion to Compel should be denied.

        **FRANKLIN UNIVERSITY**
        **By Counsel**,

        */s/ Denise D. Pentino*
        Denise D. Pentino (W. Va. Bar No. 6620)
        J. Michael Prascik (W. Va. Bar No. 9135)
        DINSMORE & SHOHL, LLP
        2100 Market Street
        Wheeling, WV 26003
        304-230-1700
        304-230-1610 (facsimile)
        denise.pentino@dinsmore.com
        michael.prascik@dinsmore.com

## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| Mountain East Conference | : |
| | : Civil Action No. 1:21-CV-104 |
| Plaintiff, | : |
| | : Judge Thomas S. Kleeh |
| vs. | : |
| | : |
| Franklin University, *et al.* | : |
| | : |
| Defendants. | |

### CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of September, 2022, I served a copy of ***Defendant Franklin University's Memorandum in Opposition to Plaintiff MEC's Motion to Compel Discovery*** with the Clerk of Court using the CM/ECF system, which will provide notification of such filing to all CM/ECF participants, as follows:

Jordan A. Sengewalt, Esq.
SPILMAN THOMAS & BATTLE, PLLC
1233 Main Street, Suite 4000
P.O. Box 831
Wheeling, WV  26003

Michael S. Garrison, Esq.
SPILMAN THOMAS & BATTLE, PLLC
48 Donley St., Ste. 800 (Zip 26501)
P.O. Box 615
Morgantown, WV  26507-0615
*Counsel for Plaintiff*

DINSMORE & SHOHL, LLP

*/s/ Denise D. Pentino*
Denise D. Pentino (W. Va. Bar No. 6620)
J. Michael Prascik (W. Va. Bar No. 9135)