IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


MOUNTAIN EAST CONFERENCE,

       Plaintiff,

v.                                         CIVIL ACTION NO. 1:21-CV-104
                                                    (KLEEH)


FRANKLIN UNIVERSITY, an Ohio
non-profit corporation; and
FRANKLIN UNIVERSITY - URBANA, LLC,
d/b/a URBANA UNIVERSITY an Ohio
limited liability company,

       Defendants.


## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 50]

Pending before the Court is Plaintiff's Motion for Summary Judgment [ECF No. 50]. For the reasons discussed herein, the Motion is **GRANTED**.


### I.   RELEVANT PROCEDURAL POSTURE AND UNDISPUTED FACTS

On July 26, 2021, Plaintiff Mountain East Conference ("Plaintiff" or "MEC") filed a Complaint against Defendants Franklin University ("Franklin") and Franklin University – Urbana, LLC, d/b/a Urbana University ("Urbana") (collectively "Defendants") alleging breach of contract, seeking a damages award of $150,000.00. ECF No. 1-1, Compl. Plaintiff's Motion for Summary Judgment [ECF No. 50], filed on September 12, 2022, requests summary judgment against Defendants on the sole cause of action

MEC v. Franklin University, et al.                    1:21-CV-104

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 50]

for breach of contract. Defendants filed a response in opposition. ECF No. 64. Plaintiff replied in support. ECF No. 71. The Motion for Summary Judgment [ECF No. 50] is ripe for review and is the subject of this Memorandum Opinion and Order.

Mountain East Conference, or MEC, is a division II competitor in the National Collegiate Athletic Association, and was established on August 20, 2012. ECF No. 1-1, Compl. ¶ 9. In November 2012, MEC executed its Constitution and Bylaws, which were later updated on August 28, 2018. Id. at ¶ 10; See ECF No. 51-1, Application; ECF No. 51-3, Bylaws; ECF No. 51-4, Constitution. Urbana was listed as one of twelve charter members of the conference. ECF No. 51-4, Constitution, Art. III. By Urbana University President Stephen Jones' signature on November 30, 2012, Urbana "agree[d] to abide by the bylaws of the conference including the paying of dues for conference membership." ECF No. 51-1, Application.  Urbana agreed to pay annual full-time member dues in the amount of $25,000.00.

As an MEC member institution, Urbana was subject to Article III, Section 8 of the MEC Constitution, which governed membership resignation from the conference. When a withdrawing member of the MEC formally notifies the conference of its intent to withdraw, as required by Article III, Sec. 8.1, the withdrawal "shall become effective on the June 30, three years and one month following the

2

MEC v. Franklin University, et al.                    1:21-CV-104

MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT [ECF NO. 50]

filing date that follows an official notice stipulated within 8.1."

ECF No. 51-4, Constitution, Art. III, Section 8.

However,

> [i]f a withdrawing member institution is
> unable to comply with . . . Section 8.2, it
> shall be liable for a sum based upon the
> schedule listed within this section
> immediately upon notification. 8.3.1 If
> withdrawal occurs more than 24 months prior to
> the effective date stipulated within 8.2, the
> withdrawing institution will owe a sum equal
> to six years of annual dues.

ECF No. 51-4, Constitution, Art. III, Section 8. Therefore, MEC maintains that pursuant to the Constitution, the exit fee for Urbana is $150,000.00.

Six years before Urbana's exit from the MEC, however, Franklin University purchased Urbana in April 2014 "to become a part of the Franklin family and operate as a division of Franklin, often referred to as Franklin/Urbana." ECF No. 1-1, Compl. ¶ 13; ECF No. 51-5, Decker Dep. 46:20-47:23. The impetus for the asset purchase was Urbana falling into bankruptcy. Id. In an attempt to "keep the institution alive," Franklin purchased Urbana. Id. Franklin did not assume Urbana's contracts or obligations at the time of the asset purchase. Id. 72:4-15. However, Franklin cancelled an Urbana contract after the acquisition, but it was not the MEC contract.

MEC v. Franklin University, et al.                    1:21-CV-104

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 50]**

ECF No. 51-5, Decker Dep. 166:1-167:25.[1]  Urbana was to retain its name and affiliation with the NCAA pursuant to the purchase agreement. ECF No. 1-1, Compl. at ¶ 14; ECF No. 51-7, Lucas Letter. The Urbana University President at the time, Dr. George Lucas, wrote in a September 2016 letter:

> Urbana University currently operates as a wholly owned subsidiary of Franklin University, and has done so since its purchase in 2014. To date, the two entities have maintained separate accreditations, both with the Higher Learning Commission (HLC). This structure of separate accreditations was principally pursued, as it was believed to be the necessary path to maintaining our NCAA membership. . . Through this letter, we seek confirmation of Urbana University's ability to maintain NCAA membership if a consolidated accreditation between the two entities were to be enacted in the best interests of Franklin University and Urbana University.
>
> . . .
>
> Should a single accreditation under the HLC be agreed to in this circumstance, the fundamental change would result in Urbana University no longer being separately accredited, but accredited as a part of Franklin University, thus becoming a branch campus. Meeting the federal definition of a branch campus, Urbana University will maintain an administration body separate from that of Franklin University, including separate presidents, as well as executive leadership, as the two entities serve very different

---

[1] Nothing in the record before the Court indicates Franklin endeavored to "cancel" its contract with MEC until it provided its departure notice in April 2020.  Instead, the record reveals Franklin continued to pay conference dues and otherwise enjoy the benefits of MEC membership under the conference's Constitution and By-Laws until then.

4

**MEC v. Franklin University**, et al.                    **1:21-CV-104**

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT [ECF NO. 50]**

student bodies.

ECF No. 51-7, Lucas Letter.

On September 27, 2016, President Lucas' request was granted, and Urbana received approval from the NCAA for its change of status to a single accreditation under Franklin. ECF No. 51-8, NCAA Letter. Urbana officially became a "branch campus" of Franklin in August of 2017. ECF No. 51-6, Washington Dep. 40:1-11. Urbana became "[indistinguishable] from Franklin[]", and its existing academic probation was wiped clean. ECF No. 1-1, Compl. ¶¶ 16-18. Christopher Washington, 2017 CEO of Urbana, and David Decker, President of Franklin, reiterated that decision-making for Defendants rested solely with Franklin after Urbana became a branch campus of Franklin. ECF No. 51-6, Washington Dep. 93:1-25. David Decker hired and fired all presidents of Urbana between 2014, the year of the asset purchase, and 2020, the year Urbana exited MEC. ECF No. 51-5, Decker Dep. 51:8-54:15.

Over time, Franklin's push to cultivate its athletics programs at the branch campus Urbana accelerated, in part due to the financial incentive. Id. 82:1-5; ECF No. 51-5, Decker Dep. 45:11-46:11. "In an effort to promote [Defendants] and the recently acquired athletic offerings for the institution, from approximately 2014 through 2018, Franklin [] contributed more than $15,000,000.00 into [Defendants'] facilities," including

5

MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT [ECF NO. 50]

wrestling, football, gymnasium, and soccer facilities. ECF No. 1-1, Compl. ¶ 19. Washington, Urbana's CEO at the time, utilized social media to promote athletics at the branch campus. Washington Dep. 96:1-21, 97:4-9. He also maintained his membership on the Board of Directors of MEC. Id. 19:5-9, 20:5-7.

In April 2020, Franklin decided it was closing Urbana's physical campus, moving all classes online, and stopping enrollment for new students at the end of the spring semester, including sports. Id. 136:18-138:25. Washington had no control over the decision and was surprised by the announcement that the branch campus was closing, even though he was Urbana's CEO. Id. Washington's May 8, 2020, correspondence officially notified MEC "of [Urbana's] intention to withdraw from the Mountain East Conference and to cease all intercollegiate athletic activities, effective immediately." ECF No. 51-9, Washington Letter. Washington described the closure as an extraordinary circumstance and that "Urbana University has no economic or practical ability to continue its relationship with the Conference." Id. MEC views this correspondence as Urbana's "official notification of withdrawal" contemplated by Constitution, Art. III, Section 8.

MEC sent a demand letter to Franklin, requesting the "exit fee in the amount of $150,000.00, as a result of Defendants' unilateral decision to withdraw from the MEC." ECF No. 1-1, Compl.

MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT [ECF NO. 50]

¶ 36; ECF No. 51-11. Franklin received approximately $4,000,000 in federal government relief funds after the closure of Urbana under a higher education relief package. ECF No. 51-5, Decker Dep. 177:5-25. This relief money was not applied to the Urbana branch campus for reopening. ECF No. 51-6, Washington Dep. 150:9-18. Washington believes Franklin's refusal to pay the exit fee originates from the issues caused by the COVID-19 pandemic, and that its intention of leaving the MEC was never to conference jump, which is what the exit fee was designed to deter. Id. 19:1-20:1-17. To date, Defendants have not paid any part of the exit fee MEC believes it is owed.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving

MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT [ECF NO. 50]

party, there [being] no 'genuine issue for trial.'"   Matsushita
Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)
(citation omitted).

### III. <u>DISCUSSION</u>

The Court grants the motion for summary judgment. ECF No. 50.
There exists no genuine dispute of material fact on the breach of
contract claim, and MEC is entitled to judgment as a matter of
law.

To form a valid, enforceable contract, there must be
"competent parties, legal subject-matter, valuable consideration,
and mutual assent." Syl. Pt. 5, Virginian Export Coal Co. v.
Rowland Land Co., 131 S.E. 253 (W. Va. 1926). "To
prove breach of contract in West Virginia, the plaintiff must
demonstrate that (1) a contract exists between the parties, (2)
the defendant breached a term of that contract and (3) damages
resulted from the breach." Creamer v. Am. Family Life Assurance
Co. of Columbus, No. 1:16-cv-182, 2017 WL 3473317, *1, *2 (N.D.W.
Va. Aug. 11, 2017) (citing Wittenberg v. Wells Fargo Bank, N.A.,
825 F. Supp. 2d 731, 749 (N.D.W. Va. 2012)).

"[A] valid written instrument which expresses the intent of
the parties in plain and unambiguous language is not subject to
judicial construction or interpretation but will be applied and

MEC v. Franklin University, et al.                    1:21-CV-104

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 50]

enforced according to such intent." Syl. Pt. 1, Cotiga Dev. Co. v. United Fuel Gas Co., 128 S.E.2d 626 (W. Va. 1962). Offer, acceptance, and consideration is required in every contract. Cook v. Heck's, Inc., 342 S.E.2d 453, 458 (W. Va. 1986).

MEC moves for summary judgment, arguing there exists no genuine dispute of material fact and it is entitled to judgment as a matter of law on each element of its breach of contract claim: (1) the MEC Constitution and Bylaws is a valid contract between MEC and the defendants; (2) MEC performed; (3) the defendants breached by refusing the pay the $150,000 exit fee; and (4) MEC suffered damages in the amount of $150,000, the total fee contemplated in the liquidated damages provision. ECF No. 51. Defendants responded in opposition to each point except that the MEC performed and that it suffered damages as a result of Defendants' refusal to pay the exit fee.[2] ECF No. 64. Defendants contend: (1) the MEC Constitution and Bylaws does not constitute a contract between MEC and the defendants; and (2) even if the MEC Constitution and Bylaws is an enforceable contract, Franklin is not a party to it, and Urbana, having permanently closed, is

---

[2] The last element of damages was briefly mentioned in Defendants' Supplemental Brief Relating to Plaintiff's Motion for Summary Judgment, filed with leave of Court on February 14, 2023. ECF No. 104. Having included no legal argument, factual support, or authority, the Court hardly views Defendants' twice-mentioned response against an essential element of Plaintiff's claim a legal argument worth noting.

9

MEC v. Franklin University, et al.                    1:21-CV-104

MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT [ECF NO. 50]

discharged from its duty to perform under the defense of impossibility. Id.

The Court discusses each argument in turn.

### a. The MEC Constitution and Bylaws constitute a valid, enforceable contract between MEC and Defendants.

First, MEC's Constitution and Bylaws establish a binding contract between MEC and Urbana University. "The . . . by-laws are agreements between the corporation, its shareholders, and the state that grants the corporation authority to operate." In re Health Diagnostic Laboratory, Inc., 557 B.R. 885, 896 (Bankr. E.D. Va. 2016). "It is well established that the formal bylaws of an organization are to be construed as a contractual agreement between the organization and its members." Meshel v. Ohev Sholom Talmud Torah, 869 A.2d 343, 361 (D.C. Cir. 2005) (internal citation omitted). "[T]he Conference Bylaws constitute[] a contractual agreement between the Parties." Rutgers, The State Univ. v. Am. Athletic Conf., No. 12-7898, 2013 WL 5936632 at *8 (D. N.J. 2013); see also Compton v. Alpha Kappa Alpha Sorority, Inc., 64 F. Supp. 3d 1, 16 (D.D.C. 2014) (finding "[an] [organization's] Constitution and Bylaws form a contract between that [organization] and its members.").[3]

---

[3] Franklin alludes to the "all-too-real phenomenon" of conference realignment in its opposition to MEC's motion. ECF No. 64 at 3. Administrators, student-athletes, alumni and fans of colleges and universities at all levels of

MEC v. Franklin University, et al.                    1:21-CV-104

### MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 50]

On November 30, 2012, Urbana University, a charter member of the MEC, "agree[d] to abide by the bylaws of the conference including the paying of dues for conference membership" by Stephen Jones' signature, Urbana University's former president. ECF No. 51-1, MEC_508; ECF Nos. 51-3, 51-4. The commissioner of MEC, Reid Amos, also signed the agreement. ECF No. 51-1, MEC_509. Urbana paid annual membership dues to the MEC from 2014 through 2019, totaling $150,000.00. ECF Nos. 9-2, 9-3. Therefore, a valid, enforceable contract existed between Urbana University and MEC.[4]

Undisputed evidence shows that Franklin University is a successor corporation to Urbana and is therefore bound by the MEC Constitution and Bylaws. Asset purchase agreements can expressly

---

intercollegiate athletics are forced to deal with the sometimes significant consequences of conference membership changes on an ongoing basis it seems. "Conference jumping" is not the only cause of this angst but may very well be the most common one. One side effect has been a cottage industry of litigation among schools, conferences and others. Despite this, Franklin fails to cite to the Court any authority relevant to the conference realignment context finding conference constitutions and by-laws unenforceable non-contracts. The Court likewise found no such holding. To the contrary, even a cursory review of orders from conference realignment litigation around the country reveals such agreements are viewed and treated as enforceable, legally-binding contractual agreements resulting in exit fees being paid from departing schools to their former conferences. See, e.g., David Ubben, Luck Details WVU Big East Exit, Big 12 Move, (April 17, 2012), https://www.espn.com/blog/big12/post/_/id/48416/luck-details-wvu-big-east-exit-big-12-move, (last visited March 8, 2023).

[4] Franklin's own actions in departing MEC membership run counter to its position no enforceable contract exists between it and MEC. As noted, Christopher Washington's May 8, 2020, letter officially notified MEC "of [Urbana's] intention to withdraw from the Mountain East Conference" ECF No. 51-9, Washington Letter. If Franklin believed it owed no contractual obligations to MEC, no such letter would need to be sent "withdrawing" from membership in a conference it now disavows.

MEC v. Franklin University, et al.                    1:21-CV-104

MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT [ECF NO. 50]

disavow or assume debts and obligations. See Cather v. Seneca-Upshur Petroleum, Inc., No. 1:09cv139, 2010 WL 3271965, *1, *3 (N.D.W. Va. Aug. 18, 2010) ("An agreement by a corporation to purchase another      corporation's assets and assume its liabilities makes the purchaser liable for the other's debts." (citing Davis, 420 S.E.2d at 562); Jordan v. Ravenswood Aluminum Corp., 455 S.E.2d 561, 564 (W. Va. 1995) (finding the purchaser "did not expressly or impliedly assume the debts or obligations" when the Asset Purchase Agreement specifically stated the purchaser "does not assume, and shall not be obligated to pay, perform or discharge any debts, liabilities or obligations of [the purchased entity].").

A successor corporation can be a mere continuance or reincarnation of its predecessor under Davis v. Celotex Corp., 420 S.E.2d 557 (W. Va. 1992).

> A successor corporation can be liable for the debts and obligations of a predecessor corporation if there was an express or implied assumption of liability . . . Successor liability will also attach in a consolidation or merger under W. Va. Code, 31-1-37(a)(5) (1974). Finally, such liability will also result where the successor corporation is a mere continuation or reincarnation of its predecessor.

Syl. Pt. 3, Id. "A successor corporation is defined as 'another corporation, which through amalgamation, consolidation, or other

12

MEC v. Franklin University, et al.                    1:21-CV-104

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT [ECF NO. 50]**

legal succession, becomes invested with rights and assumes burdens
of [the] first corporation.'" Milmoe v. Paramount Senior Living at
Ona, LLC, 875 S.E.2d 206, 212 (W. Va. 2022) (quoting Total Waste
Mgmt. Corp. v. Com. Union Ins. Co., 857 F. Supp. 140, 151 (D.N.H.
1994)) (citation omitted). "[T]he assets of the predecessor
company must be transferred to the successor" in order for
successor liability to apply. Id. at 213.

     To determine whether a purchasing corporation is a mere
continuation or reincarnation of the selling corporation under
Davis, "a court should examine the commonality of ownership between
the transferor and transferee entities." Carter Enters., Inc. v.
Ashland Specialty Co., Inc., 257 B.R. 797 (S.D.W. Va. 2017) (citing
Jordan v. Ravenswood Aluminum Corp., 455 S.E.2d 561, 564 (W. Va.
1995)).[5] Hiring the predecessor corporation's employees, assuming

---

[5] The Court in Jordan v. Ravenswood Aluminum Corp., 455 S.E.2d 561, 564 (W. Va.
1995) relies upon 19 Am.Jur.2d Corporations § 2711 [1986] for factors to
determine the buyer corporation was not a mere continuation or reincarnation of
the seller corporation. The Jordan Court quoted § 2711: "[T]he mere continuation
exception to the rule of nonliability envisions a common identity of directors
and stockholders and the existence of only one corporation at the completion of
the transfer." Id.

     However, 19 Am.Jur.2d Corporations § 2711 [1986] has been removed from
WestLaw and is unavailable to the Court. To the extent the Supreme Court of
Appeals of West Virginia relies upon American Jurisprudence 2d, this Court found
related language in 19 Am. Jur. 2d Corporations § 2306 (2023). The federal
"substantial continuation test" requires courts to consider eight factors:
(1) retention of the same employees by the buyer;
(2) retention of the same supervisory personnel;
(3) retention of the same production facilities in the same location;
(4) production of the same product;
(5) retention of the same name;
(6) continuity of assets;

MEC v. Franklin University, et al.                    1:21-CV-104

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 50]**

the day-to-day operations, and taking over its clientele does not alone render the purchasing corporation a "successor corporation" under West Virginia law. Milmoe, 875 S.E.2d at 213-14. "[I]f a corporation were organized by the same persons who had previously formed a partnership, and in which organization no other persons were interested, and all the property of the partnership were transferred to the new organization, the corporation would thereby become liable for the debts of the partnership." Carter Enters., Inc., 257 B.R. at 804 (quoting Swing v. Taylor and Crate, 70 S.E. 373, 375 (W. Va. 1911)).

The Court finds, under the mere continuation exception, that Franklin is a successor corporation to Urbana. Franklin is a mere continuation of Urbana and therefore assumed Urbana's liabilities, including the contract between MEC and Urbana. In April 2014, Franklin purchased Urbana to become a part of the Franklin family and operate as a division of Franklin, often referred to as Franklin/Urbana. Urbana was to retain its name and affiliation with the NCAA pursuant to a purchase agreement. In August 2017, Franklin officially brought in Urbana as a "branch campus" under a single Franklin accreditation, making Urbana

---

(7) continuity of general business operations; and
(8) whether the buyer holds itself out as a continuation of the divesting corporation.

MEC v. Franklin University, et al.                    1:21-CV-104

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT [ECF NO. 50]**

"[indistinguishable] from Franklin[]." ECF No. 1-1, Compl., ¶¶ 16-18.

The two entities shared commonality of ownership. Indeed, Washington and Decker agree that the decision-making for both Defendants rested solely with Franklin after Urbana became a branch campus of Franklin. ECF No. 51-6, Washington Dep. 93:1-25. David Decker hired and fired all presidents of Urbana between 2014, the year of the asset purchase, and 2020, the year Urbana exited MEC. ECF No. 51-5, Decker Dep. 51:8-54:15. While Franklin maintains it did not assume any of Urbana's contracts, it assumed at least one, as Franklin cancelled an Urbana contract after the acquisition, but it was not the MEC contract. Id. 166:1-167:25. Urbana's withdrawal was instituted by Franklin's Board of Trustees' April 2020 decision to close Urbana permanently. Id. 169:5-23. Washington, Urbana's CEO at the time, was surprised by Franklin's decision to close Urbana's campus. Washington Dep. 136:18-138:25.

Franklin continued performing under the MEC Constitution after the 2014 acquisition, and its role as a mere reincarnation of Urbana took shape. Franklin benefitted from Urbana's athletic programs, only made possible due to the membership with MEC. See ECF No. 51-6, Washington Dep. 82:1-5; ECF No. 51-5, Decker Dep. 45:11-46:11. Understanding its financial incentive, Franklin

MEC v. Franklin University, et al.                    1:21-CV-104

MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT [ECF NO. 50]

contributed $15,000,000 into Urbana's athletic facilities. Playing

in a Division II league, Defendants were positioned to consistently

play games and decrease travel costs, maximizing their benefit of

participating in the MEC. ECF No. 51-2, Amos Dep. 51:15-52:23. For

all of these reasons, there is no genuine dispute that Franklin is

bound by the MEC Constitution as Urbana's successor.

**b. By refusing to pay the exit fee, Defendants breached the contract.**

Finding that Defendants are bound by the MEC Constitution, a

valid, enforceable contract, the Court turns to the issue of

breach.

Washington's May 8, 2020, correspondence officially notified

MEC "of [Urbana's] intention to withdraw from the Mountain East

Conference and to cease all intercollegiate athletic activities,

effective immediately." ECF No. 51-9, Washington Letter. Because

Defendants' withdrawal was effective immediately, and not within

the guidelines proscribed by Article III, Section 8.2 of the MEC

Constitution,[6] Defendants are subject to Article III, Section

8.3.1, which binds them to paying six years of annual dues, or

$150,000. ECF No. 51-4, MEC Constitution. All parties agree that,

---

[6] Article III, Section 8.2 states: "The withdrawal shall become effective on
the June 30, _three years and one_ _month_ following the filing date that follows
an official notice stipulated within 8.1."

MEC v. Franklin University, et al.                    1:21-CV-104

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 50]**

not only have Defendants failed to pay the exit fee, they have refused. ECF No. 51-5, Decker Dep. 211:4-212:12.

In a last-ditch effort to avoid summary judgment, and with no facts articulated, Defendants claim performance under the contract was rendered impossible when Urbana dissolved. "A party pleading impossibility as a defense must demonstrate that it took virtually every action within its powers to perform its duties under the contract." Waddy v. Riggleman, 606 S.E.2d 222, 234 (W. Va. 2004) (internal citation omitted). The doctrine of impossibility is now referred to as the rule of impracticability:

> Under the doctrine of impracticability, a party to a contract who claims that a supervening event has prevented, and thus excused, a promised performance must demonstrate each of the following: (1) the event made the performance impracticable; (2) the nonoccurrence of the event was a basic assumption on which the contract was made; (3) the impracticability resulted without the fault of the party seeking to be excused; and (4) the party has not agreed, either expressly or impliedly, to perform in spite of impracticability that would otherwise justify his nonperformance.

Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP, 746 S.E.2d 568, 574 (W. Va. 2013) (quoting Riggleman, syl. pt. 2).

Franklin's impracticability defense fails for many reasons. Other than its attempt to take refuge under the COVID-19 pandemic, Franklin pleaded no facts to support any element of the affirmative

MEC v. Franklin University, et al.                    1:21-CV-104

### MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 50]

defense. All evidence points to summary judgment on this issue. Franklin's president testified the university can afford to pay the exit fee, but refuses. ECF No. 51-5, Decker Dep. 211:4-212:12. Franklin received approximately $4,000,000 in federal government relief funds after the closure of Urbana under a higher education relief package. Id. 177:5-25. The relief money was not applied to the Urbana branch campus for reopening. ECF No. 51-6, Washington Dep. 150:9-18. This effort to paint a picture of financial or other impossibility or impracticability falls short even at summary judgment stage. Franklin would bear the burden of proof on this defense at trial. "In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

Urbana may have "died"[7] – as Defendants put it – when Franklin shut its doors barely a month after the onset of the COVID-19

---

[7] In its Response, Franklin takes its impossibility argument to an extreme noting MEC Commissioner Reid Amos testified the Conference would seek to enforce its exit fee provisions in the event of "environmental disaster or a terrorist attack." ECF No. 64 at 14. Nothing approximating such a calamity exists here. Franklin's decision to close its Urbana branch campus, based on the record before the Court, appears to be a financial decision. It may have been within its rights to make such a decision but such decisions often have consequences. Those consequences are set forth in MEC's Constitution and By-Laws.

MEC v. Franklin University, et al.                    1:21-CV-104

MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT [ECF NO. 50]

pandemic, but Franklin survived. As the successor corporation to the contract, Franklin certainly did not "take virtually every action within in powers to perform its duties" and breached its contract, indefensibly, with the MEC by refusing to pay the exit fee.

### c. The liquidated damages provision in the Constitution is enforceable as a matter of law.

MEC seeks $150,000.00 in liquidated damages because Urbana University did not "comply with the withdrawal stipulations set forth under Section 8.2" of the MEC Constitution, which essentially call for a three-year notice of a member institution's withdrawal. ECF No. 51-4, Art. III, Sec. 8.2.

Contracts can contain provisions for liquidated damages.

> Under West Virginia law, parties may contract for liquidated damages 1) when damages would be difficult to ascertain by any known or safe rule, or 2) when the nature of the case and tenor of the agreement establish that the parties              calculated the liquidated damages through  actual  fair estimate and adjustment.

Gateway Towne Centre, LLC v. First United Bank and Trust, No. 1:09cv127, 2011 WL 3877010, *1, *7 (N.D.W. Va. Sept. 2, 2011) (internal citations and quotation marks omitted). A liquidated damages provision is unenforceable if it proscribes a penalty. Huntington Eye Assocs., Inc. v. LoCasio, 533 S.E.2d 773, 782 (W. Va. 2001). "[W]hen the amount is grossly disproportional in

MEC v. Franklin University, et al.                    1:21-CV-104

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT [ECF NO. 50]**

comparison to the damages actually incurred[,]" the liquidated damages clause is an unenforceable penalty. Id. (internal citations and quotation marks omitted). "A reviewing court must look retrospectively to determine whether a disputed liquidated damages clause would impose a penalty if enforced." First United, 2011 WL 3877010 at *7 (internal citation omitted).

Reasonableness is an important factor in considering whether a liquidated damages clause is valid. See id.; see also Wheeling Clinic v. Van Pelt, 453 S.E.2d 603, 609 (W. Va. 1994) (finding "liquidated damages in the amount of 100% of Dr. Van Pelt's 'aggregate earnings' for the year prior to his departure, are reasonable and not grossly disproportional to the damages incurred.").

> [I]n determining whether a clause in a contract stating a sum to be paid in the event of a breach of the contract is liquidated damages or a penalty, the important question is not the intention of the parties but rather the reasonableness in fact of the agreed sum when the contract was made.

Id. The party seeking to enforce a liquidated damages clause must prove by a preponderance of the evidence the damages are not punitive. First United, 2011 WL 3877010 at *7.

MEC points out it is standard practice for collegiate athletic conferences and universities to enter into liquidated damages contracts. MEC cites two persuasive cases on the issue, both courts

MEC v. Franklin University, et al.                    1:21-CV-104

MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT [ECF NO. 50]

upholding liquidated damages provisions in the contracts. See
Vanderbilt Univ. v. DiNardo, 174 F.3d 751 (6th Cir. 1999) (finding
"[t]he stipulated damage amount is reasonable in relation to the
amount of damages that could be expected to result from the breach.
. . . [T]he parties understood that Vanderbilt would suffer damage
should DiNardo prematurely terminate his contract, and that these
actual damages would be difficult to measure."); O'Brien v. Ohio
State Univ., 859 N.E.2d 607 (Ohio Ct. Cl. 2006) (finding the
liquidated damages amount of $2,253,619.45 not disproportionate to
plaintiff's actual damages). Indeed, "[m]ember schools voluntarily
contract to abide by the rules of the organization in exchange for
membership in the association." Nat'l Collegiate Athletic Ass'n v.
Lasege, 53 S.W.3d 77, 87 (Ky. 2001).

> If a school wants to enjoy the benefits of
> membership in the [conference], the school
> agrees to be subject to a rule that permits
> the [conference] to require the school to
> forfeit victories, trophies, titles and
> earnings if a trial court improperly grants an
> injunction or restraining order prohibiting
> enforcement of [conference] eligibility
> rules. Such an agreement shows no disrespect
> to the institution of the judiciary.

Id. This choice of contract is not risk-free. Id.

Here, MEC has proven by a preponderance of the evidence that
the liquidated damages provision of the MEC contract is not an
unenforceable penalty. The sophisticated parties to this contract

21

MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT [ECF NO. 50]

agreed to the liquidated damages payment of $150,000 in the event
of a breach. By becoming a member of the MEC, Urbana, and its
successor-in-contract Franklin, agreed to follow the rules of the
conference, including payment of the exit fee. The provision at
issue totals 6 years of conference dues, a total that is not
grossly disproportional to the damages incurred by MEC.

The liquidated damages provision is an actual fair estimate
and adjustment because it is a reasonable approximation of loss to
MEC. The profit margin is narrow for the MEC, having earned, on
average, $60,000-$70,000 annually, absent the few thousand-dollar
award for any championship win. ECF No. 51-2, Amos Dep. 22:1-5.
About half its expenses are dedicated to salaries and benefits,
and the rest supports its 12 member institutions, of which
Defendants were one. Id. at 22:8-17. The MEC is charged with
operating 23 championship events, one for each of its 23 sports.
Id. Satisfaction among its member institutions is of high
importance to the MEC, so that it can create and maintain student
commitment and, in turn, revenue. Id. 23:6-19. Simply put, the
MEC's main objective is to recruit more students, which generates
revenue, and help its 12 member institutions thrive in the market.
Id. 46:2-47:3. The provision at issue totals 6 years of conference
dues, a total that is not grossly disproportional to MEC's
anticipated damages, having to recover any injury to its reputation

MEC v. Franklin University, et al.                    1:21-CV-104

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 50]**

and replace the exiting institution with a new competitive member despite having no advance notice whatsoever from one of its members.

While an essential element of MEC's breach of contract claim was ignored by Defendants, MEC has proven its liquidated damages provision in the amount of $150,000 is not a penalty, by a preponderance of the evidence. As of June 1, 2021, pursuant to the MEC's Constitution and Bylaws, Defendants owed MEC $150,000, an amount consisting of six-times the annual dues of $25,000, since Defendants' withdrawal occurred more than twenty-four (24) months prior to the effective date of June 30, 2023.

## IV. <u>CONCLUSION</u>

For the reasons discussed above, Plaintiff's Motion for Summary Judgment is **GRANTED**. ECF No. 50. Plaintiff's Motion to Strike Reply to Supplemental Brief is **GRANTED** [ECF No. 117] and Defendants' Reply to Supplemental Brief [ECF No. 116] is **STRICKEN** from the Court's docket. The Clerk is **DIRECTED** to enter judgment in favor of Plaintiff. This action is hereby **DISMISSED WITH PREJUDICE AND STRICKEN** from the Court's docket.

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record. The Clerk is further

MEC v. Franklin University, et al.                    1:21-CV-104

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT [ECF NO. 50]**

directed to enter a separate order of judgment consistent with

this Memorandum Opinion and Order.

    **DATED:**  March 8, 2023

                                    _Tom 8 Klut_
                                    _____
                                    THOMAS S. KLEEH, CHIEF JUDGE
                                    NORTHERN DISTRICT OF WEST VIRGINIA